UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOHN LITZLER, CHAPTER 7 TRUSTEE FOR        :
THE BANKRUPTCY ESTATE OF                    :
DATA RACE, INC.                             :   **OPINION AND ORDER**
                                            :   **GRANTING DEFENDANTS'**
                    Plaintiff,              :   **MOTION FOR**
                                            :   **SUMMARY JUDGMENT**
        -against-                           :
                                            :   02 Civ. 6313 (AKH)
CC INVESTMENTS, L.D.C.,                     :
CASTLE CREEK PARTNERS, LLC,                 :
OLYMPUS SECURITIES, LTD.,                   :
NELSON PARTNERS,                            :
CITADEL LIMITED PARTNERSHIP,                :
DATA RACE, INC.,                            :
                                            :
                    Defendants.             :
------------------------------------------------------------------x

ALVIN K. HELLERSTEIN, U.S.D.J.:

      This case involves a difficult, and not too frequently litigated, question under the Securities Exchange Act: whether three separate investors, who responded separately to an issuer's desire to sell a newly issued class of securities, and did not consider themselves a group, but appointed one of their counsel to act for all in negotiating an agreement with issuer's counsel, may be held to be a group for purposes of forfeiting short-swing profits under section 16(b) of the Securities Exchange Act. Although the answer to the issue is usually fact driven, in this case the answer is clearly "no," and summary judgment is awarded, dismissing the complaint.

**I.    The Undisputed Facts**

      Data Race, Inc. ("Data Race"), a small NASDAQ listed company based in Texas, was in need of capital to market a new product. It hired a placement agent, Southcoast Capital

1

Corporation ("Southcoast") to locate potential investors for a private placement of a Series C convertible preferred stock. Southcoast separately presented a preliminary term sheet to Citadel Limited Partnership ("Citadel"), investment manager for Nelson Partners ("Nelson") and Olympus Securities, Ltd. ("Olympus") (collectively, the "Citadel Defendants"); to Capital Ventures International ("CVI"); and to Castle Creek Partners, LLC ("Castle Creek"), investment manager for CC Investments, L.D.C. ("CC"), without revealing the identity of potential investors to each other. After the Citadel Defendants indicated interest, Southcoast arranged for a due diligence session at Data Race's headquarters, which CVI, Castle Creek, and Citadel representatives attended.

Follow-up conference calls after the due diligence were arranged by Data Race, sometimes with all of the potential investors, other times with individual investors. Each investor engaged independent counsel to advise them on the transaction, and it was the policy of some or all of the investors to keep their due diligence evaluations and trading strategies to themselves. Each potential investor, based on its own due diligence analysis and advice from its own counsel, made an independent decision to invest in the Series C convertible preferred stock. Castle Creek and CC were represented by Peter Lieberman, an attorney with the firm Altheimer & Gray. CVI was represented by Michael Spolan and Todd Silverberg. And the Citadel Defendants were represented by Robert Brantman, an attorney with the firm Katten Muchin & Zavis. Each party's counsel had direct contact with Data Race and its counsel, Akin & Gump, throughout the negotiations. But Data Race wanted counsel for one investor to act as a principal draftsperson, and Brantman was selected to fill that role. Brantman circulated drafts to the investors' counsel and communicated comments from them to Data Race; he did not provide

2

legal advice to any investor but his clients, the Citadel Defendants. The Securities Purchase Agreement provided for Data Race to reimburse Citadel for Brantman's services.

Data Race entered into a Securities Purchase Agreement, among other agreements, with Olympus, Nelson, CC, and CVI on November 7, 1997 for Series C Convertible Preferred Stock. The first traunch of securities, valued at $5 million, closed on November 12, 1997, with a conditional purchase of an additional $3 million of the convertible preferred stock planned for January 1998. CVI purchased 1,250 preferred shares and 34,965 warrants, CC purchased 1,875 preferred shares and 52,448 warrants, and the Citadel Defendants purchased 1,875 preferred shares and 52, 448 warrants. Each holder had the right individually to convert the preferred stock at either a fixed or floating conversion price. After February 11, 1998, each investor sent notices at various times to Data Race to convert different amounts of its respective shares of the stock. The Citadel Defendants frequently sold and made delivery the same day by converting preferred stock and then delivering the common stock. Data Race agreed that the transactions should not be considered "short sales" prohibited by the Securities Purchase Agreement, and entered into a letter agreement with the Citadel Defendants so providing. The price of Data Race's common stock during the conversions affected by the investors declined from $5 per share on November 12, 1997 to $0.625 on July 13, 1998. By July 17, 1998, all of the Series C Convertible Preferred Stock had been converted.

The closing of the second traunch was twice adjourned, from January 1998 to April 1998 and then to June 1998, due to the dropping price of Data Race shares. Data Race requested that the Series C investors waive their right of first refusal, to open the way for Series D and E preferred stock placements. Each investor gave the requested consent.

In June 1999, approximately a year after the conversions had been completed, counsel for a Data Race shareholder, Barbara Schaffer, requested Data Race to commence an action to recover short-swing profits realized by the Series C investors. Data Race, in response, asked its lawyers to investigate the matter, and following that investigation, Board of Directors of Data Race determined not to sue, believing that the likelihood of prevailing in court was low. Subsequently, Data Race filed a petition under Chapter 7 of the U.S. Bankruptcy Code in June 2002. Schaffer filed the original complaint in this action on August 8, 2002, alleging substantially similar claims as those in her June 1999 letter to Data Race. John Litzler, Chapter 7 Trustee for Data Race, was substituted as Plaintiff on September 27, 2002.

## II. Procedural History

Plaintiff filed its Amended Complaint September 27, 2002, seeking to recover short-swing profits under section 16(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78p(b). It alleges that the Citadel Defendants, together with CC, Castle Creek, and CVI—three separate hedge funds—acted as a group under section 13(d)(3) of the Securities Exchange Act of 1934 (hereinafter "SEA"), id. § 78m(d)(3), and thus "any profit realized by" them "from any purchase and sale" of equity securities in Data Race are "recoverable" by Data Race under section 16(b) of the SEA, id. § 78p(b).

By Order dated January 30, 2003, I denied the Citadel Defendants' motion to dismiss the Amended Complaint because of the two year statute of limitations under section 16(b) of the SEA, id. § 78p(b), holding that there had been equitable tolling. Litzler v. CC Investments, L.D.C., No. 02 Civ. 6313 (S.D.N.Y. filed Feb. 3, 2003). By Order dated March 6, 2003, I denied Defendants' motion for reconsideration, but certified the issue of the equitable

4

tolling for interlocutory appeal. Litzler v. CC Investments, L.D.C., 2003 U.S. Dist. LEXIS 11009 (S.D.N.Y. Mar. 6, 2003). By Mandate issued September 15, 2004, the Court of Appeals vacated my Order dated February 3, 2003 and remanded for further factual exploration. Litzler v. CC Investments, L.D.C., 362 F.3d 203 (2d Cir. 2004).

The parties have now completed discovery. The Citadel Defendants—the only Defendants remaining following settlements between Plaintiff and the other Defendants—again move to dismiss, this time upon summary judgment. They argue that Plaintiff has failed to prove that the Citadel Defendants acted with others as a group under section 13(d)(3), and thus were not liable to Plaintiff for profits under section 16(b), and that there are no triable issues. For the reasons stated below, Defendants' motion for summary judgment is hereby granted.

### III. Discussion

Summary judgment is warranted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although all facts and inferences therefrom are to be construed in favor of the party opposing the motion, see Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 498 (2d Cir. 2001), the non-moving party must raise more than just "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen, 273 F.3d at 499.

5

Section 16(b) of the Securities Exchange Act of 1934 makes "recoverable by the issuer" "any profit realized by" "a beneficial owner" from "any purchase and sale . . . of an equity of [the] issuer." 15 U.S.C. § 78p(b). To state a claim under section 16(b), Plaintiff must show: "(1) a purchase and (2) a sale of securities (3) by . . . a shareholder who owns more than ten percent of any class of the issuer's securities (4) within a six-month period." Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998). The shareholder must be a 10% beneficial owner before the short-swing transaction. Foremost-McKesson, Inc., v. Provident Secs., 423 U.S. 232, 249-50 (1976).

It is undisputed that the Citadel Defendants owned, beneficially and of record, 8.5% percent of Data Race's securities. Plaintiff argues that the 10% required by section 16(b) is met because the Citadel Defendants, and the other Defendants, were a "group," and together they owned more than 10%.

Section 13(d)(3) of the Securities Exchange Act of 1934 considers a group of investors to be a single "owner" for the purposes of section 16(b) "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer." 15 U.S.C. § 78m(d)(3). To establish the existence of such a group, there must be evidence of an agreement. See Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1) (2006) ("[W]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed shall be deemed to have acquired a beneficial ownership, for purposes of Sections 13(d) and 13(g) of the Act."); Wellman v. Dickinson, 682 F.2d 355, 363 (2d Cir. 1982) ("[T]he touchstone of a group . . . is that the members combine in furtherance of a common objective.").

6

The parties need only have "combined to further a common objective with regard to one of those activities," that is, acquiring, holding, or disposing of securities. Morales v. Freund, 163 F.3d 763, 767 n.5 (2d Cir. 1999). General allegations of parallel investments by institutional investors do not suffice to plead a "group." See, e.g., Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C., 2001 U.S. Dist. LEXIS 20374, at *37 (S.D.N.Y. Dec. 10, 2001).

Plaintiff argues that the Citadel Defendants formed a group with the other Defendants in their acquisitions of Data Race's convertible preferred stock in the private placement. Plaintiff points out that they acted through a common lawyer, Robert Brantman of Katten Muchin & Zavis. Plaintiff also argues that the group activity was apparent in the decisions of each investor to convert its preferred shares into common stock, and the decisions of each investor not to purchase shares in the second traunch. There is no evidence of communications among the parties following the closing of the first traunch. Although there is no other fact of concerted activity to which Plaintiff cites, Plaintiff argues nevertheless that the coordinated activities of purchase entitle him to argue his case to the jury. I hold to the contrary.

In this transaction, the three groups of investors – Citadel, CC Investments, and CVI Investments – were each represented by separate counsel, and made their decisions separately, based on their own, separate investment considerations. They appointed one of their lawyers to negotiate on behalf of the three, in response to the suggestions of Data Race's lawyers, and because the circumstances of a private placement require a single set of documents equally affecting all investors. The common lawyer took instructions from his own client and, through the other two lawyers, from their clients. It is not substantially disputed that Data Race did not consider the three as a group. Careless drafting referring to Brantman as "investors' counsel" and all of the investors as his "clients" are not significant evidence of Data Race's

7

view. The Securities Purchase Agreement required each of the investors to agree that each alone could not acquire or convert to hold more than 5% of Data Race's securities, and Data Race did not make any disclosures of a group that would have been required if Data Race had believed that the investors were, in fact, a group. Each of the three investors made their own decisions when and how to convert their preferred shares to common stock, and sell those shares, at different market prices, at different times, and under different conditions. It is undisputed that neither Citadel, nor the other two investors, were interested in purchasing a controlling block of Data Race's securities, or otherwise exercising control of Data Race.

The SEC has acknowledged the "sound business considerations such as cost savings" that generally lead to "cooperative activity characteristic of an institutional placement." Filing and Disclosure Requirements Relating to Beneficial Ownership, Securities Act Release No. 5925, Exchange Act Release No. 14692, Investment Company Act Release No. 10212, 1978 SEC LEXIS 1716, *54 (Apr. 21, 1978). More than such cooperative activity has to be alleged and proved to show that the investors were motivated by "a desire to affect control," or by some other indicia of concerted activity. Id. These concerns are embodied in the exception to Rule 13d-5(b)(1), whereby certain investors (registered broker dealers, registered investment companies, etc.) are deemed not to have acted as a group as long as the purchase was in the "ordinary course of each [investor's] business" and "[t]here is no agreement among, or between any [investors] . . . except for the purpose of facilitating the specific purchase involved." Rule 13d-5(b)(2), 17 C.F.R. § 240.13d-5(b)(2).

Morales v. Quintel Entertainment, Inc., which found a triable issue of fact whether a group existed under section 13(d), is easily distinguished. 249 F.3d 115, 127 (2d Cir.

8

2001). In that case, the three shareholders who acted as a group had a pre-existing common relationship as the sole shareholders of a closely-held corporation. All three placed their shares in identical trusts with the same trustee at the same time, and resold their shares to the issuer at the same time. In addition, one of the members of the group, in filings with the SEC, reported to be a member of a section 13(d) group.

The Court of Appeals for the Second Circuit, vacating the district court's grant of summary judgment dismissing the Morales complaint, held that "[t]aking these facts in context, a reasonable trier of fact could discredit the two cited sworn statements, and infer instead that" the three purported group members "'agree[d] to act together for the purposed of acquiring'" the shares. Id. at 125-26 (alteration in original). No such distinguishing facts exist in the case at bar, where there was no prior history or relationship that could suggest a group activity.

Plaintiff also cites Schaffer v. CC Investments, LDC (Schaffer III), 2002 WL 31869391 (S.D.N.Y. Dec. 20, 2002), as a precedent in favor of holding that a triable issue of fact exists. But there was much more to Schaffer than reliance on common legal services. The concerted activity of the three shareholders in Schafer III occurred over an extensive period of months and through a number of transactions. They made their investment in the issuer together with a common motivation, sold their patent rights together, gave the issuer the right against all to redeem their preferred shares, and otherwise acted together.

Private offerings of securities generally involve common purchase agreements with subscribers. Commonly the agreements are drafted by the issuer's lawyer but, where only a few sophisticated purchasers show interest, leverage can change and purchaser's counsel can assume a more decisive role. That is what happened in the case before me.

9

Plaintiff shows nothing more than the use of a lead draftsman, at the behest of Data Race, by the investors. All other activities and decisions, including due diligence, the decision to purchase, and the decision to sell, were done individually. And no group activity is even alleged to have occurred thereafter. For the reasons stated, Defendants' motion for summary judgment is granted. The complaint is dismissed and the clerk shall mark the file closed.

SO ORDERED.

Dated: New York, New York
January 24, 2006

ALVIN K. HELLERSTEIN
United States District Judge